FMC CORPORATION, Appellant,

v.

Cynthia Ann HOLLIDAY, Appellee.

No. 89–3226.

United States Court of Appeals,
Third Circuit.

Argued July 25, 1989.

Decided Sept. 11, 1989.

Rehearing and Rehearing In Banc
Denied Oct. 5, 1989.

---

Charles Kelly [argued], H. Woodruff Turner, Stephen M. Rosenblatt, Kirkpatrick and Lockhart, Pittsburgh, Pa., for appellant.

Thomas G. Johnson [argued], Malcolm & Johnson, Indiana, Pa., for appellee.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge and WOLIN, District Judge *.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

FMC Corporation appeals from a summary judgment in favor of the defendant Cynthia Ann Holliday, in FMC's action seeking a declaratory judgment that it is entitled to subrogation against Ms. Holliday's recovery for personal injuries received in an automobile accident. FMC is an employer operating a health plan and employs Ms. Holliday's father. She was permanently injured, and FMC has paid and will in the future pay her medical expenses pursuant to that plan. The district court held that under Pennsylvania law FMC had no subrogation rights, and that Pennsylvania law was not preempted by section 514 of the Employee Retirement Income Security Act

* Hon. Alfred M. Wolin, United States District Judge for the District of New Jersey, sitting by

of 1974 (ERISA), 29 U.S.C. § 1144. FMC contends the district court erred in both respects. We will affirm.

### I.

On January 16, 1987, Ms. Holliday, then age 15, was seriously and permanently injured while riding as an automobile passenger in Indiana County, Pennsylvania. Her medical expenses to date exceed $178,000 and the cost of future care is unknown. At the time of the accident her father owned an automobile policy issued by State Farm Mutual Automobile Insurance Company, which paid the first $10,000 of his daughter's medical bills. Mr. Holliday also commenced a negligence action on behalf of his daughter in the Court of Common Pleas of Indiana County against Robert Lyons, the driver of the car in which she was a passenger at the time of the accident. That case proceeded to an eventual settlement on September 3, 1987, under which Lyons interpleaded his $100,000 automobile liability policy in favor of Ms. Holliday and three other claimants injured in the accident. Ms. Holliday's recovery was limited to $49,-875.50 plus accrued interest.

At the time of the accident Mr. Holliday was also a covered employee under FMC's Salaried Health Plan, which provided benefits for dependents. That plan contains coordination of benefits clauses as follow:

> If you or a covered member of your family are eligible to receive benefits under another group medical plan, Health Maintenance Organization (HMO), government plan, or by "no-fault" automobile insurance which provides medical coverage, you may be eligible for benefits from those Plans and your FMC plan. In the case of coverage by "no-fault" automobile insurance, FMC will pay covered expenses not paid for by no-fault insurance.

\* \* \* \* \* \*

*No–Fault*

designation.

In some states with no-fault motor vehicle coverage, the carrier is the primary insurer in these jurisdictions. All medical expenses related to an accident must be submitted to the carrier and not the FMC Health Care Plan. Eligible expenses not paid for by no-fault insurance *will* be paid by the FMC Plan.

Relying on these clauses FMC commenced paying Ms. Holliday's medical expenses only when the $10,000 no-fault coverage under her father's State Farm automobile policy was exhausted. That $10,000 is not in dispute.

The FMC Salaried Health Plan also contains a subrogation clause as follows:

The FMC self insured benefit program is automatically assigned the right of action against third parties in any situation in which benefits are paid to employees or their dependents. If you bring a liability claim against any third party, benefits payable under this Plan must be included in the claim, and when the claim is settled you must reimburse the Plan for the benefits provided. You are obligated to avoid doing anything which would prejudice the Plan's rights of reimbursement, and you are required to sign and deliver documents to evidence or secure those rights. *Unless you sign the Company's "third party reimbursement form," the Claims Administrator will not process any claim where there is possible liability on behalf of a third party.*

(emphasis supplied). In order to obtain reimbursement of medical expenses in excess of $10,000, Mr. Holliday signed a third-party reimbursement form, and the Salaried Health Plan thereafter paid his daughter's medical expenses.

When FMC learned of the negligence action in Indiana County it notified the Hollidays that it intended to exercise its subrogation rights with respect to that liability claim. The Hollidays responded that 75 Pa. Cons. Stat.Ann. § 1720 of the Pennsylvania Motor Vehicle Law prohibits such subrogation. This declaratory judgment action followed.

## II.

FMC contends that the court erred in holding that the exercise of its subrogation rights is barred by the relevant Pennsylvania law. The governing statute is the Pennsylvania Motor Vehicle Financial Responsibility Law, Act of Feb. 12, 1984, No. 11, § 3, 1984 Pa.Laws 28, as amended by Act of Feb. 12, 1984, No. 12, § 3, 1984 Pa.Laws 53, 75 Pa.Cons.Stat.Ann. §§ 1701–1798 (Purdon 1988), which is a comprehensive effort to establish a uniform system for the prompt payment of economic losses suffered by victims of vehicular collisions, including coverage for medical expenses arising out of the maintenance or use of a motor vehicle. *See Pennsylvania Legislative Journal*, 167th Sess., Oct. 4, 1983, at 1147 (comments of Sen. Holl); *id.*, 167th Sess., Dec. 14, 1983, at 2241 (comments of Rep. Manderino). Two provisions of the Motor Vehicle Law bear directly on this case: section 1720, which bars the assertion of subrogation rights; and section 1719, which helps define the scope of section 1720.

Section 1720 precludes subrogation with reference to a broad range of insurance arrangements:

In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits in lieu thereof paid *or payable under section 1719 (relation to coordination of benefits).*

75 Pa.Cons.Stat.Ann. § 1720 (emphasis added). The coordination of benefits provision reads:

(a) *General rule.*—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availabili-

ty of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.

(b) *Definition.*—As used in this section the term "program, group contract or other arrangement" includes, *but is not limited to,* benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations).

75 Pa.Cons.Stat.Ann. § 1719 (emphasis added).

The FMC Salaried Health Plan clearly falls within the plain meaning of section 1719. First, the Motor Vehicle Law elsewhere defines the term "benefits" to include "medical benefits". 75 Pa.Cons. Stat.Ann. § 1702. Second, section 1719(b) expressly employs non-exclusive language in defining the types of programs the statute covers. Finally, FMC effectively availed itself of section 1719's coordination of benefits formula in the Salaried Health Plan's parallel clauses quoted above. FMC's counterarguments are without merit. In a reading anything but plain, the corporation contends that the use in section 1719 of the phrase "group contract," an insurance term of art, indicates a clear intent to regulate only entities whose primary purpose is providing insurance or health care services. In itself a questiona-

ble interpretation of the term "group contract," FMC's argument ignores section 1719's use of two other patently non-exclusive terms, namely, "program" and "other arrangement." ERISA uses the terms "plan, fund or program" to define ERISA plans, 29 U.S.C. § 1002(1); the phrase "other arrangements" could scarcely be more broad on its face.

Pointing to the fact that subrogation is a long-established principle in Pennsylvania law, FMC urges that the Financial Responsibility law should be presumed not to have made any change in that principle unless the legislature was more specific. That position, however, is inconsistent with Pennsylvania's statute on statutory interpretation providing, at least since 1937, that statutes in derogation of the common law in general "be liberally construed to effect their objects and promote justice." 1 Pa.Cons.Stat.Ann. § 1928(c) (Purdon 1989).[1] FMC's reliance on *Commonwealth v. Miller,* 469 Pa. 24, 364 A.2d 886, 887 (1987), moreover, is unavailing since that case deals with criminal statutes, which as a class are among the exceptions to be strictly construed. It is well settled that insurance statutes, in contrast, fall into the primary class and are meant for liberal interpretation. *Antanovich v. Allstate Ins. Co.,* 320 Pa.Super. 322, 327, 467 A.2d 345, 348 (1983), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985); *Miller v. United States Fidelity & Guar. Co.,* 304 Pa.Super. 43, 54, 450 A.2d 91, 97 (1982), *aff'd,* 503 Pa. 127, 468 A.2d 1097 (1983).

---

1. Pennsylvania's statute on statutory interpretation does provide for strict construction for certain categories, but the Motor Vehicle Law falls into none of them. The full provision reads:

§ 1928. Rule of strict and liberal construction
(a) The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937.
(b) All provisions of a statute of the classes hereafter enumerated shall be strictly construed:
  (1) Penal provisions.
  (2) Retroactive provisions.

  (3) Provisions imposing taxes.
  (4) Provisions conferring the power of eminent domain.
  (5) Provisions exempting persons and property from taxation.
  (6) Provisions exempting property from the power of eminent domain.
  (7) Provisions decreasing the jurisdiction of a court of record.
  (8) Provisions enacted finally prior to September 1, 1937 which are in derogation of the common law.
(c) All other provisions of a statute shall be liberally construed to effect their objects and to promote justice.
1 Pa.Cons.Stat.Ann. § 1928 (Purdon 1988).

FMC's alternative argument from statutory interpretation, that the Financial Responsibility Law employs language making it more restrictive than its predecessor statute, fares no better. The earlier act, the Pennsylvania No-fault Motor Vehicle Insurance Act of 1974, Pa.Stat.Ann. tit. 40, §§ 1009.101–1009.701 (Purdon 1989) (repealed), contained sweeping antisubrogation language. Under section 1009.-111(a)(4) of the No-fault Act, "[i]n no event shall any entity providing benefits other than no-fault benefits to an individual as described in section 203 of this act, [Section 1009.203 of this title] have any right of subrogation with respect to said benefits." FMC attempts to make use of the alteration of this wording by first noting the common sense rule-of-thumb that different words in a subsequent statute on the same or a related topic indicate that the legislature must have intended a different meaning. *Klein v. Republic Steel Corp.*, 435 F.2d 762, 765–66 (3d Cir.1970). It then argues that the manifestly narrower language of the antisubrogation provision in the current Motor Vehicle law betokens an intent to excuse self-insured health care benefit programs such as FMC's. These arguments must be rejected. The current statute's use of the terms "program, group contract or other arrangement" appears hardly less broad than the "any entity" language of the No-fault Law. Moreover, nothing in either the statute or the legislative history indicates any substantive intent to exclude programs like the FMC plan from the ambit of the bar to subrogation. The scant legislative history that does exist indicates, to the contrary, a desire to apply the prohibition broadly for the sake of uniformity and consistency. *See Pennsylvania Legislative Journal*, 167th Sess., Oct. 4, 1983, at 1147 (comments of Sen. Holl); *id.*, 167th Sess., Dec. 14, 1983, at 2241 (comments of Rep. Manderino).

We hold, therefore, that the district court did not err when it ruled that FMC's subrogation claim is barred by the Pennsylvania Financial Responsibility Law. That holding requires that we address FMC's preemption contention.

### III.

FMC, relying on *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157 (9th Cir.1986), contends that section 514 of ERISA categorically exempts from state regulation all self-funded employee benefit programs, and that such preemption reaches state law modifications of the common law of subrogation. Ms. Holliday, relying on *Northern Group Services, Inc. v. Auto Owners Insurance Co.*, 833 F.2d 85 (6th Cir.1987), contends that Congress did not intend such categorical preemption. Rather, she urges, Congress intended to shield employee benefit programs only from state law that encroaches on ERISA concerns in the guise of insurance regulation. The question of preemption by ERISA of statutory changes in subrogation law, when those changes are effected by state no-fault insurance statutes, has not been presented to this court.[2]

ERISA's section 514, 29 U.S.C. § 1144, is hardly a model of legislative draftsmanship. The section deals with preemption, but congressional intention must be gleaned from the interrelationship among a "preemption" clause, a "savings" clause, and a "deemer" clause.

The "preemption" clause broadly provides, in relevant part:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). The "savings" clause, however, appears to restore virtually all the state regulation that the "preemption" clause invalidates, at least so far as insurance laws are concerned. This provision states:

---

**2.** FMC contends that *Insurance Board of Bethlehem Steel Corp. v. Muir*, 819 F.2d 408 (3d Cir. 1987), requires a decision in its favor. The issue before us was not addressed in that case.

Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any persons from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). Finally, the "deemer" clause in subparagraph (B) apparently brings the reader full circle by exempting employee benefit plans from state insurance regulation:

Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

The resulting interpretive difficulties were summarized by the Court of Appeals for the Sixth Circuit, which observed:

The difficult problem in interpreting the preemption portion of ERISA § 514, 29 U.S.C. § 1144 is defining the scope of each of the three critical clauses so that each has a meaning and so that benefit obligations are governed by a rational system of state law and federal common law. Congress indicated its intention only in a very general way and left to the federal courts the problem of developing on a case-by-case basis principles of preemption of state law.

*Northern Group Services*, 833 F.2d at 89. Stating the obvious more than providing guidelines for surmounting these difficulties, the Supreme Court has set forth a three-part preemption test that mirrors each of the three provisions. Under this test a court must inquire whether a state law (1) relates to an employee benefit plan; (2) regulates insurance, and (3) survives the "deemer" clause. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739–47, 105 S.Ct. 2380, 2388–93, 85 L.Ed.2d 728 (1985).

## A. *The "Preemption Clause"*

Neither party, nor any court that has dealt with the matter, disputes that the "relates to" language of the preemption clause should be read broadly in general, and broadly enough in particular to cover state no-fault automobile insurance plans. *See Northern Group Services*, 833 F.2d at 87–89. Only the Pennsylvania Trial Lawyers Association, as amicus curiae, suggests otherwise.

The command of the preemption clause that ERISA must preempt "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" suggests a wide application on its face. The Supreme Court sanctioned the plain meaning approach in *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–98, 103 S.Ct. 2890, 2899–2901, 77 L.Ed.2d 490 (1983). Holding that a state law directing health insurers to provide mental health care benefits "clearly" related to ERISA, the Court opined that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900; *Metropolitan Life*, 471 U.S. at 739, 105 S.Ct. at 2388. Moreover, if the preemption clause had been intended to be read narrowly, the remaining two clauses would have been unnecessary. *Northern Group Services*, 833 F.2d at 89.

Despite their split in outcome, the two Courts of Appeals that have considered antisubrogation laws concur in following *Shaw*. The Sixth Circuit held that Michigan's No–Fault Automobile Insurance Act, and specifically the statute's coordination of benefits provisions, "directly ... allocate[d] obligations to make insurance payments contrary to the express coordination-of-benefits language of the [ERISA] plan." *Northern Group Services*, 833 F.2d at 89. In consequence, "[h]olding that this state law does not 'relate to' the plan would run contrary to the plain meaning of the text and to the relevant case law and legislative history." *Id.* Similarly, in *Pacyga* the Court of Appeals for the Ninth Circuit had no difficulty in determining that Arizona's

common law rule against subrogation also "relate[d] to" ERISA plans, this despite the Court's ultimate use of the deemer clause to find preemption nonetheless.[3] 801 F.2d at 1160. No other holdings so squarely address the preemption clause aspect of this case.

The Pennsylvania Trial Lawyers nonetheless argue for a more limited application of the preemption clause, relying on cases less apposite than *Shaw*. In the first, the Supreme Court held that Georgia's general garnishment statute did not "relate to" ERISA benefit plans. *Mackey v. Lanier Collections Agency & Ser.*, 885 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Far from overruling *Shaw* and *Metropolitan Life*, *Mackey* instead finessed a narrow exception. The majority, in the face of a four-justice dissent, reasoned that since creditors of ERISA plans are commonly allowed to bring state civil law actions and employ state methods of enforcing judgments, the creditors of plan participants should be able to do the same. *Mackey*, 108 S.Ct. at 2186–89. However questionable its logic, the *Mackey* court's exception to the Court's usual reading of the preemption clause rested exclusively on state laws dealing with the enforcement of civil judgments. The other cases offered are even less on point. Just prior to *Mackey*, the Supreme Court held that a Maine statute mandating a one-time severance payment in the event of a plant closing also did not, in ERISA's words, "relate to any employee benefit plan." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The *Coyne* Court, however, took pains to distinguish statutes that would affect an ERISA plan on an ongoing basis from those affecting a one-time payment. 107 S.Ct. at 2220; *see Northern Group Services*, 833 F.2d at 88–89. No more compelling is the Trial Lawyers' reliance on *Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir.1984). There the Court of Appeals for the Second Circuit held that ERISA did not preempt a state plan regulating hospital insurance rates that only incidentally touched pension plans. This outcome simply accords with *Shaw*'s common sense dictum that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

Thus we reject the amicus position that the preemption clause should be read narrowly. It is broad enough to cover state antisubrogation laws.

### B. *The "Savings Clause"*

Both parties and the amicus agree that the type of antisubrogation provision found in the Pennsylvania Financial Responsibility Law "regulates insurance" within the meaning of the savings clause. This position accords with the two Circuits that have considered the matter. *Northern Group Services*, 833 F.2d at 89–90; *Pacyga*, 801 F.2d at 1160–61. It also accords with the clause's plain meaning and statutory structure, and with formal standards for interpreting general insurance provisions, as developed by the Supreme Court.[4] We agree that Pennsylvania's Financial Responsibility Law plainly "regulates insurance" with-

---

**3.** The *Pacyga* Court also noted that the Arizona subrogation rule "purported to regulate" ERISA plans as well, a further requirement for finding that a state law "relates to" ERISA. 801 F.2d at 1160. This additional requirement is evidently peculiar to the Ninth Circuit, *Martori Bros. Distributors v. James–Massengale*, 781 F.2d 1349, 1359 (9th Cir.1986), though the Second Circuit uses a version of the "purports to regulate" test to define the regulating "State" under 29 U.S.C. § 1144(c)(2), *see Rebaldo v. Cuomo*, 749 F.2d 133, 137–38 & n. 1 (2d Cir.1984).

**4.** Three years after ERISA's enactment a congressional oversight report noted:

In general these exemptions [to preemption] are designed to save state law as it is applied to entities which are not employee benefit plans ..., to the extent that such regulation does not relate to employee benefit plans. Subcomm. on Labor Standards, House Comm. on Educ. & Labor, ERISA Oversight Report of The Pension Task Force 8 (1977). As the Court of Appeals for the Sixth Circuit opined, "[t]hese subsequent legislators (or their staff) did not seem to recognize or consider the fact that the 'savings' clause would not be necessary at all if it only saves state laws that do not 'relate to' ERISA plans." *Northern Group Services*, 833 F.2d at 89.

in the meaning of the savings clause. The statute's coordination of benefits and anti-subrogation provisions directly control the terms of insurance contracts. Application of the clause therefore clearly comports with the common sense view of statutory text extended to the savings provision in *Metropolitan Life*, 471 U.S. at 740–43, 105 S.Ct. at 2389–91. The Financial Responsibility Law also meets the further common sense requirement that a state law not merely affect some aspect of the insurance industry, but be specifically directed toward it. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987).

The placement within section 514 of the savings clause bolsters this common sense interpretation. The savings clause is followed directly by the deemer clause which states that an employee benefit plan shall not be deemed an insurance company "for purposes of any law of any State purporting to regulate ... insurance contracts." 29 U.S.C. § 1144(b)(2)(B). "By exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause." *Metropolitan Life*, 471 U.S. at 741, 105 S.Ct. at 2389–90. Insofar as the Financial Responsibility Law expressly regulates insurance contracts, it necessarily falls within the ambit of the savings provision.

Finally, the Supreme Court's standard for determining when a practice constitutes "the business of insurance," developed with reference to the McCarran–Ferguson Act of 1945, 15 U.S.C. §§ 1011–1015, removes any doubt that the Financial Responsibility Law "regulates insurance." Three factors are relevant to the determination:

> *first,* whether the practice has the effect of transferring or spreading the policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is

limited to entities within the insurance industry.

*Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)). Every court that has applied these criteria to coordination of benefits requirements has found the first two criteria easily satisfied. *See Northern Group Services,* 833 F.2d at 90; *Pacyga,* 801 F.2d at 1161. While the Financial Responsibility Law does go beyond the third criterion insofar as it reaches any "program, group, or other arrangement" including health and hospital plans, its principal and substantial effect is nonetheless on the insurance industry. *See Northern Group Services,* 833 F.2d at 90; *Pacyga,* 801 F.2d at 1161.

### C. *The "Deemer Clause"*

The deemer clause, which states that no "employee benefit plan ... shall be deemed to be an insurance company ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts," creates an exception to the savings provision, which itself created an exception to the general preemption clause. 29 U.S.C. § 1144(b)(2)(B). Preemption in this case, therefore, turns on whether FMC's Salaried Health Plan falls within the deemer clause exception insulating employee plans from state regulation. Neither the statutory text, legislative history, nor case law provides a clear answer; this is one reason that the two courts of appeals which addressed it parted company on this precise point. Of the two solutions, *Northern Group Services* comes closer to the correct interpretation, namely, that the deemer clause is meant mainly to reach back-door attempts by states to regulate core ERISA concerns in the guise of insurance regulation. *See* 833 F.2d at 91–94.

Support for this answer comes from the statutory text. The deemer clause protects ERISA plans from being deemed insurers, or otherwise in the business of insurance, by any state law "purporting" to regulate insurance. Remarks from two of the sponsoring senators support the view that the

use of "purporting" betokens a congressional concern only for regulation that was merely a pretext for impinging upon ERISA plans. Senator Javits stated that broad Federal preemption meant to bar "[s]tate laws hastily *contrived* to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme." 120 Cong.Rec. 29,942, *reprinted in* 3 Legislative History of the Employee Retirement Income Security Act of 1974, at 4770–71 (emphasis added). Senator Williams also displayed concern for pretextual state infringements, albeit in the context of professional regulation having the force of state law rather than state insurance laws themselves:

> Consistent with th[e] principle [of broad preemption regarding any action that has the force or effect of law] State professional organizations acting under the *guise* of State-enforced professional regulation, should not be able to prevent unions and employers from maintaining the types of employee benefit programs which Congress has authorized.

120 Cong.Rec. 23,933, *reprinted in* 3 Legislative History of the Employee Retirement Income Security Act of 1974, at 4746 (emphasis added). *See Northern Group Services,* 833 F.2d at 93 n. 3.

The legislative history more generally also offers support for a "pretextual" construction. Initially, both the House and Senate versions of the bill preempted only those state laws concerning ERISA's "fiduciary, reporting and disclosure responsibilities" or relating to "the subject matter" it was to regulate. Both versions also contained a savings clause for state insurance regulation, but neither contained any deemer provision. The first version of the deemer clause did not arise until the Houses replaced the language of the original H.R. 2 with that of H.R. 12,906 just prior to passage of the preconference bill. This new version, including a narrower progenitor of the preemption clause and an earlier model of the savings provision, read:

## EFFECT ON OTHER LAWS

SEC. 514. (a) It is hereby declared to be the express intent of Congress that ... the provisions of part 1 of this subtitle shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan to which part 1 applies.

(b) Nothing in part 1 of this subtitle shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities or to prohibit a State from requiring that there be filed with a State agency copies of reports required by this title to be filed with the Secretary. *No employee benefit plan subject to the provisions of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.*

(c) It is hereby declared to be the express intent of Congress that the provisions of parts 2, 3, and 4 of this subtitle shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the nonforfeitability of participant's benefits in employee benefit plans ..., the funding requirements for such plans, the adequacy of financing of such plans, portability requirements for such plans, or the insurance of pension benefits under such plans.

2 Legislative History of the Employee Retirement Income Security Act of 1974, at 2920–22 (emphasis added). The Senate version included no comparable deemer language.

Before the conference, the committee declared itself to be divided on whether the

House version, with the deemer clause, should be adopted. As a compromise, "some of the staff" suggested that the language be incorporated, but only for a limited time subject to subsequent study. 3 Legislative History of the Employee Retirement Income Security Act of 1974, at 5283.

The conference bill combined these versions and recommendations in several ways. First, it adopted the current broad preemption provision without reference to specific core concerns of ERISA. Senator Javits explained that the change sprang from the concern that the more specific formulation "raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation," and a desire to err on the side of Federal uniformity. 120 Cong.Rec. 29,942, *reprinted in* 3 Legislative History of the Employee Retirement Income Security Act of 1974, at 4770. Second, the conference version retained the general savings language found in both the Senate and House bills. Finally, the conference committee decided to retain the deemer provision without any time limit but with a mandate for a later congressional study of the effects of Federal preemption.[5] 29 U.S.C. § 1222(a)(5).

The net effect of these changes reinforces the view that Congress intended the deemer clause to protect core ERISA concerns within the context of the insurance regulation exception to preemption. The "purporting" language, present at the creation and previously dealt with, suggests that such concerns arose as early as H.R.

12,906. More important, the retention of the deemer clause in the face of the expanded preemption clause indicates that the deemer clause in effect was meant to do the more narrow, specified work which the original version of the preemption clause was meant to do. Read in this way the legislative history and the three clauses make sense: first, the preemption clause preempts nearly any state law relating to employee benefit plans; second, the savings clause carves out the narrow but sizable exception of state laws regulating insurance; and finally, the deemer clause guards against any insurance regulation that infringes on such ERISA areas as reporting, disclosure, and nonforfeitability.

Remarks of Senator Javits support this reading. Although not an exclusive list, all the examples of state law that the senator considered subject to preemption dealt with matters central to ERISA, of the type enumerated in the original preemption clause:

> In view of Federal preemption, State laws compelling disclosure from private welfare or pension plans, imposing fiduciary requirements on such plans, imposing criminal penalties on failure to contribute to plans—unless a criminal statute of general application—establishing State termination insurance programs, et cetera, will be superseded.

120 Cong.Rec. 29,942, *reprinted in* 3 Legislative History of the Employee Retirement Income Security Act of 1974, at 4771. Any reading other than one confined to the central aspects of ERISA would either have the deemer clause swallow the savings clause or read into the statute other distinctions that are not there.

---

5. The study that resulted, part of the 1977 Activity Report of the House Committee on Education and Labor, suggests an opposite interpretation of the deemer clause. According to the report:

> the "deemed" language was utilized to create an irrebuttable presumption that these plans are not insurance, trust companies, etc., for purposes of state regulation. As a drafting technique the "deemed" is used in section 514(b) not to *bar* the use of a legal fiction by the states but to *create* what may amount to a legal fiction in a given circumstance. The irrebuttable presumption would not be overcome even if an employee benefit plan engages in activities which bring it within the

insurance, trust, or securities activities generally regulated by a state.

Subcomm. on Labor Standards, House Comm. on Educ. & Labor, ERISA Oversight Report of the Pension Task Force 10 (1977) (emphasis in original).

As the Court of Appeals for the Sixth Circuit pointed out, however, a "*post hoc* explanation ... is entitled to little weight when it conflicts with a reasonable interpretation of statutory text and prior legislative history." *Northern Group Services,* 833 F.2d at 92 (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 117–18 & n. 13, 100 S.Ct. 2051, 2061 & n. 13, 64 L.Ed.2d 766 (1980)).

The latter course is that followed by the *Pacyga* court and urged by FMC. In their view the deemer clause incorporates a bright line distinction between employee benefit plans that purchase insurance and those, like FMC's, which are self-insured. Plans that purchase insurance are subject to state regulation regardless of the deemer clause. Self-insured plans purportedly are not. *See Pacyga*, 801 F.2d at 1161.

The principal, if not sole, basis for this distinction is Supreme Court dicta. In *Metropolitan Life*, the Court upheld a Massachusetts law mandating that certain benefits be included in certain health plans. 471 U.S. 724, 105 S.Ct. 2380. The majority, reasoning that the state law "regulated insurance" within the meaning of the savings clause, rejected the appellant's argument that the clause covered only direct regulation of traditional insurance activities. Apparently since the health plans at issue could not be considered ERISA employee benefit plans, the appellant did not assert an alternative deemer clause argument. The Court nonetheless stated:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

*Metropolitan Life*, 471 U.S. at 747, 105 S.Ct. at 2393. For support the Court cited neither statutory text nor legislative history. Instead, relying on vague language in Congress' *post hoc* study the Court opined, in a footnote:

> A 1977 Activity Report of the House Committee on Education and Labor recognized the difference in treatment between insured and non-insured plans:

> "To the extent that [certain programs selling insurance policies] fail to meet the definition of an 'employee benefit plan' [subject to the "deemer clause"], state regulation of them is not preempted by section 514, even though such state action is barred with respect to the plans which purchase these 'products.'" H.R. Rep. No. 94–1785, p. 48. A bill to amend the saving clause to specify that mandated-benefit laws are preempted by ERISA was reported to the Senate in 1981 but was not acted upon.

*Metropolitan Life*, 471 U.S. at 747 n. 25, 105 S.Ct. at 2393 n. 25.

Both the *Pacyga* court and FMC rely almost entirely on the foregoing dicta. In *Pacyga*, the court held that ERISA preempted Arizona antisubrogation law with regard to self-insured employee benefit plans. The court reasoned that such plans fell within the protection of the deemer clause on the basis of the distinction set forth in *Metropolitan Life*. *Pacyga*, 801 F.2d at 1161–62. The *Pacyga* opinion's terse treatment lacks any reference to statutory text, structure, or history.[6] It simply points to the formal distinction made in the *Metropolitan Life* footnote. Importation of that formal distinction to a different content is not proper in the face of direct consideration of congressional intent. Nor, as the *Northern Group Services* opinion has pointed out, need there necessarily be a conflict. The distinction between insured and self-insured plans does not disappear. Rather, under *Metropolitan Life* insured plans would *per se* survive the deemer clause, while self-insured plans would merely be considered on a case-by-case basis as to whether the state regulation involved affects a central concern of ERISA. *Northern Group Services*, 833 F.2d at 94–95.

In light of the available interpretive materials the proper inquiry under the

---

6. Several other decisions have likewise imported the *Metropolitan Life* dicta, but the cases are distinguishable. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shiffler v. Equitable Life Assurance Soc'y*, 838 F.2d 78 (3d Cir.1988). None of these cases dealt with the history or purpose of the deemer clause. The reason they did not, more-

over, was that the claims brought forward fell prey not to the deemer clause, but directly to the preemption clause because the state laws involved did not "regulate insurance" under the savings provision. *See, e.g., Pilot Life*, 481 U.S. at 57 & n. 4, 107 S.Ct. at 1558 & n. 4; *Shiffler*, 838 F.2d at 81–82.

deemer clause is whether the state insurance regulation intentionally or unintentionally addresses a core type of ERISA matter which Congress sought to protect by the preemption provision. The court, reviewing a state insurance law, should inquire whether that law conflicts with any substitute mandate in ERISA. The parties and the amicus have suggested no such conflict. Thus the savings clause applies and the deemer clause does not.

### III.

We have rejected FMC's contention that the antisubrogation provision in the Pennsylvania Financial Responsibility Law is inapplicable and its contention that if that provision applies it is preempted. The judgment appealed from will therefore be affirmed.