Roy A. MULLENIX, Arletta Howerton, Tom Willey and Mary Willey, Plaintiffs–Appellants,

v.

AETNA LIFE AND CASUALTY INSURANCE COMPANY, Defendant–Appellee.

No. 89–7733.

United States Court of Appeals, Eleventh Circuit.

Sept. 26, 1990.

Harry M. Renfroe, Jr., Mountain & Mountain, Tuscaloosa, Ala., for plaintiffs-appellants.

---

James R. Shaw, Leah F. Scalise, Huie, Fernambucq & Stewart, Birmingham, Ala., for defendant-appellee.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, Senior District Judge.

WESLEY E. BROWN, Senior District Judge:

This is an appeal from an order of the district court sustaining defendant's motion for summary judgment. The facts are not in dispute, we have jurisdiction, and an appeal from a grant of summary judgment is subject to plenary review. *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1559 (11th Cir.1990). We affirm the order of the district court granting defendant's motion for summary judgment.

Plaintiffs are employees, or dependents of employees, of a company known as Jim Walter Resources, Inc. (Mining Division). All plaintiffs were beneficiaries of an employee health benefit plan—the "Employee Benefit Plan of Jim Walter Resources, Inc., Mining Division," hereafter referred to as the "Plan." The Plan was a negotiated benefit in a wage agreement between the United Mine Workers of America and plaintiffs' employer, Jim Walter Resources, Inc.

The Plan in question is subject to all of the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001, *et seq.*

The Plan involved in this action is self-funded, not funded by insurance. There is no insurance policy. The defendant, Aetna Life and Casualty Insurance Company, is merely a third-party administrator of the Plan. All benefits are paid by the employer, Jim Walter Resources, Inc.

In 1988, plaintiffs obtained medical services from licensed chiropractors in Tuscaloosa County, Alabama, and filed claims for benefits with the defendant, Aetna. All claims were denied upon the ground that the Plan did not cover such services since the providers, who were chiropractors, were not recognized under the Plan's definition of "physician."

Chiropractic services are specifically excluded under the Plan, and any claims which were approved by Aetna in the past were erroneously approved for payment.[1]

The laws of the state of Alabama require insurers to cover chiropractic services. Alabama Code § 27–1–10 (1975) provides as follows:

§ 27–1–10. Payment for health services of chiropractor: insured to have exclusive right to select practitioner of healing arts. Any contract or policy of insurance or any plan or agreement for health services providing for reimbursement or payment for health services performed by a medical doctor or physician or upon the certification of a medical doctor, surgeon, osteopath or physician, shall also reimburse or pay for such health services performed by a doctor of chiropractic or upon his certificate; provided, that the health services performed by the doctor of chiropractic are within the scope of his license and he is duly licensed by the state of Alabama.

The insured or such other person entitled to benefits under such contract or policy of insurance or plan or agreement for health services shall have the exclusive right to choose or select any practitioner or member of the healing arts of Alabama to perform such services, notwithstanding any provisions of such contract or policy of insurance or plan or agreement for health services to the contrary. (Acts 1975, No. 1101, p. 2172, § 1)

As noted, defendant Aetna is the administrator of the Plan. It processes claims

---

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

1. It appears that Aetna had approved some benefits for chiropractic services for plaintiffs prior

to September, 1988. Supplemental Record, Docket No. 13, Defendant's Responses to Plaintiffs' Interrogatories, Paragraph 17.

filed by beneficiaries of the Plan in accordance with the terms of a contract with the employer. The Plan includes a provision for an ERISA appeal, and the wage agreement includes a provision for binding arbitration concerning benefit disputes. When their claims were turned down by Aetna, plaintiffs did not seek to appeal under the terms of the agreement.[2] Instead, they filed a suit in state court for compensatory and punitive damages, alleging that the failure of Aetna to pay plaintiffs' medical benefits for chiropractic services was a breach of contract and a "bad faith" denial of claims in violation of the provisions of Alabama law, Code § 27–1–10.

Plaintiffs' complaint erroneously alleged that defendant had issued policies of health and major medical insurance which were in full force and effect covering the plaintiffs at the time each cause of action accrued.

By answer, Aetna averred the self-insured status of the Plan, and alleged that plaintiffs' claims were preempted by the provisions of ERISA, 29 U.S.C. § 1001, *et seq.* Defendant then removed the case to the federal district court and moved for summary judgment on the grounds that the contract providing for health care specifically excluded coverage for chiropractic services, and that all of plaintiffs' claims in this action are barred by provisions of ERISA.

In sustaining defendant's motion for summary judgment, the district court found that ERISA preempts all state laws that "relate to" an employee benefit plan, 29 U.S.C. § 1144(a), except those that regulate the insurance industry, 29 U.S.C. § 1144(b)(2)(A). The court further found that while the Alabama statute relating to chiropractic services is a statute regulating the insurance industry, and would not normally be preempted, the ERISA "deemer clause" applied so that state law was preempted in this case. 29 U.S.C. § 1144(b)(2)(B). The district court further noted that since the Plan at issue in this case was fully funded by the Walter Company, and was not an insured plan, it was not subject to state regulation, citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

The question thus presented for our review is whether the "deemer clause" of ERISA operates to preempt a non-ERISA cause of action based upon an Alabama statute which regulates insurance when the employee benefit plan at issue is self-insured.[3]

In order to determine ERISA's preemptive effect upon state law, we must consult the provisions of the Act as well as the diverse opinions which seek to give guidance not only to the litigants but to states which seek to regulate the social problems of their citizens. No one questions that as a general rule the "general preemption clause" of ERISA, 29 U.S.C.

2. The trustees of the Plan have previously ruled that the Employers Benefit Plan did not cover the services of a chiropractor; Opinion of Trustees, Resolution of Dispute, Case No. 109, April 16, 1980:

> Pursuant to Article IX of the UMWA T960 Benefit Plan and Trust, and under the authority of an exemption granted by the United States Department of Labor, the Trustees have received the question of payment for x-ray services provided by a chiropractor. Their opinion is issued in Question and Answer form as follows:
> Subject: X–Rays, Chiropractor
> Reference: Employers Benefit Plan Article III, A(3)(p)1
> *Question:* Are x-ray services provided by a chiropractor covered under an Employer's Benefit Plan established pursuant to Article XX(C)(3) of the National Bituminous Coal Wage Agreement of 1978?

> *Answer:* Pursuant to Article III, Section A, (3)(p)1 of the Employer's Benefit Plan, services rendered by a chiropractor are not covered benefits. Therefore, x-ray services provided by a chiropractor would not be a covered benefit.
> (Record on Appeal, Tab 16E "R.O.D.")

The trustees have many times since denied benefits for chiropractic care. *Ibid.*

3. Aetna has raised a second reason for affirmance of the district court—namely that plaintiffs have failed to exhaust their administrative remedies as required by the Plan. We do note that the trustees for the Plan have many times issued orders and findings to the effect that chiropractic services are not covered by the Plan. (Footnote 2, *supra*) Because of our disposition of the preemption issue, we do not reach the defendant's exhaustion claim.

§ 1144(a), preempts *all* state laws which relate to any employee benefit plan. This simple statement ceases to be simple or clear when we get to the exception, and the exception to the exception, codified and now known as the "savings clause," 29 U.S.C. § 1144(b)(2)(A), and the "deemer clause," 29 U.S.C. § 1144(b)(2)(B).

The statutory treatment provides the following guidelines:

§ 1144. Other laws

(a) Supersedure; effective date

Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title ...

\*    \*    \*    \*    \*    \*

(b) Construction and application

(2)(A) *Except as provided in subparagraph (B),* nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities. (Emphasis supplied)

(B) Neither an employee benefit plan described in section 1003(a) of this title ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

In *Metropolitan Life Insurance v. Massachusetts, supra,* the Supreme Court made a distinction between insured and uninsured benefit plans when it came to the question of state regulation. It there held that a state law which required that specified minimum mental health care benefits be provided to all *insureds* was not preempted by ERISA. In so doing, the court held that the state law clearly regulated insurance and was thus within the "insurance" exception of the Act, provided by § 1144(b)(2)(A). In so doing, the court

noted that uninsured, or self-funded benefit plans were *not* subject to state regulation:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

(471 U.S. at 747, 105 S.Ct. at 2393, 85 L.Ed.2d at 745).

By a footnote to the foregoing observation, the court commented that a 1977 Report of the House Committee on Education and Labor had recognized the difference in treatment between insured and noninsured plans, but that a bill to amend the saving clause to specify that mandated-benefit laws are preempted by ERISA was not acted upon. 471 U.S., n. 25, at 747, 105 S.Ct., n. 25, at 2393, 85 L.Ed.2d, n. 25, at 745.

In a very recent case, the Fifth Circuit had occasion to rule that uninsured, or self-insured ERISA plans are not subject to state insurance regulation, either directly or indirectly. *Gonzales v. Prudential Ins. Co. of America,* 901 F.2d 446 (5th Cir. 1990). There, plaintiff sought to recover disability benefits under his employment benefit plan and also to collect penalties for an alleged wrongful refusal to pay benefits under state law. Plaintiff also claimed that Louisiana law supplanted the language of his plan, providing a definition of "total disability" which would entitle him to benefits. Prudential Insurance Company initially insured the plan and acted as administrator of the plan; but through modifications, Prudential's insurance liability was reduced to a one-year disability period, then it became only an administrator of the plan, and finally the employer took over all responsibilities for the plan which became fully self-funded and self-insured. Prudential had paid benefits for the one year required by its contract with the employer, and the employer thereafter began making disability payments from its own funds. The action was filed against Pru-

dential and the Manville Forest Products Corporation Employee Disability Plan (the Plan). Prudential and the Plan argued, and the district court held that because the state law rules relied upon by plaintiff "relate to" employee benefit plans, they are preempted under ERISA's general preemption clause. Plaintiff claimed that the state law was found in Louisiana's Insurance Code, and thus was exempt from the preemption because of ERISA's exception for the insurance industry. The Fifth Circuit determined that state law was preempted by reason of the ERISA "deemer clause," and in so doing summarized current law in light of the decision in *Metropolitan Life Insurance Co. v. Massachusetts, supra:*

> Although it has not yet faced a case in which the outcome turned on the interpretation and application of the deemer clause, the Supreme Court shed some light on the operation of that clause in *Metropolitan Life Insurance Co. v. Massachusetts* ... The Court commented that the clause creates "a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not" ... and, further, that although the clause does not in itself exempt the insurer of a plan or the insurance policy issued by such an insurer from state insurance laws, it does bar the application of state insurance laws to the plan that purchases the policy....
>
> Relying on these remarks and on the language and purpose of the deemer clause, several federal appellate and district courts, including this one, have concluded that the clause has the following specific effects. First, uninsured, or self-insured, ERISA plans are not subject to state insurance regulation, either directly or indirectly. To the extent that a state insurance law purports to apply to such a plan, it is preempted. Second, insured ERISA plans are subject to state insurance regulation, but only *indirectly*

> ... Nothing in the deemer clause prohibits the application of state insurance laws to an insurer of an ERISA plan or to an insurance policy issued by such an insurer. Thus, by regulating the insurer or the insurer's policy, the state may, without running afoul of the deemer clause, "indirectly" influence the content and operation of an insured ERISA plan. However, the state may not accomplish this end directly; that is, it may not apply and enforce its insurance laws in such a way that an ERISA plan, as opposed to the insurer of the plan, must conform to them or will face liability for failure to conform to them ... Any state law that violates this rule is preempted. (Citations omitted) (Emphasis of the court) 901 F.2d at 453–454.[4]

In *Brown v. Blue Cross & Blue Shield of Alabama, supra,* 898 F.2d 1556 (11th Cir.1990), we reviewed a denial of hospital benefits to a plaintiff who was a beneficiary under an ERISA group health plan provided by his employer. The plan in this instance was an insured plan, but we there recognized the essential differences between insured and noninsured plans:

> Our task is to develop a coherent method for integrating factors such as self-interest into the legal standard for reviewing benefits determinations. This task reaches the height of difficulty in a case such as the one before us, where an insurance company serves as the decisionmaking fiduciary for benefits that are paid out of the insurance company's assets. Several features distinguish insurance policy plans from other forms of ERISA plans.
>
> The most familiar distinction lies in the application of certain state laws to ERISA plans. Although other forms of ERISA plans may offer the same kinds of health or other benefits that insurance policy plans offer, only insurance policy plans are subject to "any law of any State which regulates insurance." *See*

---

4. Cases cited from the 5th, 9th and 11th Circuits included *Brown v. Granatelli,*.897 F.2d 1351 (5th Cir.1990); *Light v. Blue Cross and Blue Shield of Alabama,* 790 F.2d 1247 (5th Cir.1986); *United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157 (9th Cir.1986); *Moore v. Provident Life & Accident Ins. Co.,* 786 F.2d 922 (9th Cir.1986); and *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556 (11th Cir.1990).

29 U.S.C. § 1144(b)(2)(A) (savings clause); *see also id.* § 1144(b)(2)(B) (so-called deemer clause, which exempts employee welfare plans from insurance regulation.) Congress intended a distinction between insured and uninsured plans such that the former are subject to state regulations, for example, mandated-benefit laws, that have the effect of transferring or spreading a policyholder's risk, that are an integral part of the policy relationship between the insurer and the insured, and that are limited to entities within the insurance industry.... (Citations omitted) 898 F.2d at 1561.

Other cases from this circuit guide our decision here.

In *Phillips v. Amoco Oil Co.*, 799 F.2d 1464 (11th Cir.1986) *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987), employees claimed that defendants had fraudulently concealed the effect which a sale of a business would have upon their retirement benefits. We there held that ERISA expressly superseded any and all state laws relating to employee benefit plans and that plaintiffs' common law fraud claims were preempted by ERISA. We there noted that the "ERISA preemption is not limited to those state laws specifically designed to affect employee benefit plans," and that it did not preempt only those state laws which dealt with particular subject matters covered by ERISA, such as reporting and fiduciary responsibility. 799 F.2d at 1469.

In *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987), an employee was injured in an auto accident and his employment and medical benefits were terminated. He claimed health care benefits under an ERISA plan and also claimed damages for an alleged bad faith refusal to pay these benefits, and claimed damages under state law for outrageous and intentional infliction of emotional distress. We found that the employee's state law claims for bad faith refusal to pay benefits and for damages for emotional distress were preempted by ERISA. ("... ERISA preempts all state laws insofar as they apply to employee benefit plans even if those laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans." 807 F.2d at 1563).[5] In *Howard*, we also recognized that the insurance exception to ERISA, 29 U.S.C.A. § 1144(b)(2)(A), was not applicable to save plaintiff's claim against the Protective Life Insurance Company, which acted solely as administrator of the self-funded plan since Protective's activities were not "related to" insurance. 807 F.2d at 1565, n. 2.

In *Anschultz v. Connecticut General Life Ins. Co.*, 850 F.2d 1467 (11th Cir.1988), the plaintiff sought long-term disability benefits under a group insurance policy or plan carried by his previous employer. Plaintiff sought benefits under the plan, and also compensatory and punitive damages, interest, and attorney fees under a Florida statute which provided civil remedies against insurers who did not attempt to settle claims in good faith or who did not promptly settle claims due under a policy coverage. (West's F.S.A. § 624.155) We there held that the Florida statute was not exempt from preemption under the savings clause which made exception for state law which "regulates insurance."[6]

In *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277 (11th Cir.1987), parents sued an insurer and a broker for medical and surgical benefits allegedly due for treatment of a minor dependent, together

---

**5.** When an employee's claim for emotional distress is connected to his *termination from employment*, as opposed to a termination of benefits under an ERISA plan, that claim is not preempted. *See Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989)

**6.** In *Anschultz*, we applied case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.*, applying three criteria—first, whether the practice has the effect of transferring a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. While the Florida statute clearly related to the insurance industry, it did not transfer any policyholder risk and it was not an "integral part" of a policy relationship. 850 F.2d at 1468–1469.

with damages for alleged fraud and bad faith under state common law. The parents were beneficiaries of insurance programs provided by their employers, but the insurer claimed that under one program the parents had elected that minors not be covered and that under the other program coverage did not extend to preexisting conditions. This circuit held that the ERISA savings clause for the insurance industry did not apply to claims against the insurer for medical and surgical benefits and for bad faith and fraud because the Alabama law of bad faith had roots in general principles of tort and contract law and was not "related to" the insurance industry.

In *Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989), a panel of this court found that ERISA preempted claims of fraud, negligence, and misrepresentation and that plaintiffs had no claim under the Alabama "twisting statute." The statute prohibited misrepresentations or misleading comparison as to the terms, conditions, or benefits contained in any policy of insurance, made for the purpose of inducing or attempting to induce a policyholder to lapse, forfeit, exchange or convert, any insurance policy. Alabama Code § 27–12–6 (1977). Plaintiffs claimed that ERISA did not preempt their state claims because they made no claim for benefits under a policy and because their claims did not involve any administration of benefits under the defendant insurer's benefit plan. In addition, plaintiffs claimed that their action was excepted from preemption by the provisions of the savings clause which exempts state law which "regulates insurance."

The panel found that no private right of action existed under the "twisting statute" and ruled that ERISA preempted the claims of misrepresentation and negligence because the alleged wrongful conduct was contemporaneous with the insurer's refusal to pay benefits and the claims were intertwined with the refusal to pay those benefits. See *Howard v. Parisian, Inc., supra,* 807 F.2d 1560, at 1564.

In spite of the clear teachings of the Eleventh Circuit cases cited above, plaintiff would now have us adopt the analysis of the Sixth Circuit in *Northern Group Services v. Auto Owners Ins. Co.*, 833 F.2d 85 (6th Cir.1987) *cert. denied* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), and that of the Third Circuit in *FMC Corp. v. Holliday*, 885 F.2d 79 (3rd Cir.1989) *cert. granted,* —— U.S. ——, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990).

In *Northern Group Services*, the court held that a state no-fault insurance statute, making liability under no-fault policies secondary to other health and accident insurance, was saved from preemption by the ERISA savings clause and that it was not barred by the "deemer clause," even in the case of a self-insured plan (833 F.2d at 91). In *FMC Corp. v. Holliday*, the circuit held that an anti-subrogation provision of a Pennsylvania statute was not preempted by ERISA because the state law did not conflict with ERISA concerns. It was the opinion of the Third Circuit that the deemer clause was designed to protect only "core ERISA concerns."

We do not find these two cases persuasive. It appears that the Sixth Circuit has changed its position by reinterpreting the identical Michigan statute involved in *Northern Group Services.* See *Liberty Mut. Ins. v. Iron Workers Health Fund,* 879 F.2d 1384 (6th Cir.1989). It is also significant that the Supreme Court has granted *certiorari* in *FMC Corp. v. Holliday, supra,* 885 F.2d 79.[7]

---

7. The Fifth Circuit has also refused to follow the *Holliday* case, finding that *certiorari* has been granted "presumably to resolve the conflict among the circuits." *Gonzales v. Prudential Ins. Co. of America, supra,* 901 F.2d, n. 31 at 454. Appellant has also directed our attention to the recent decision of the Alabama Supreme Court in *HealthAmerica and Pamela Merle v. Edward Menton,* 551 So.2d 235 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990). Plaintiff there dropped his health insurance and enrolled in a new plan which failed to cover his dependent's medical expenses despite representations to that effect. Plaintiff then filed suit against the new insurer and its agent pleading a common law action for fraud and misrepresentation, but no claim was filed under ERISA. The state court held that a claim for fraud in the inducement did not "relate to" an employee benefit plan and was therefore not preempted by ERISA. The court further held that the Alabama "twisting statute" is a law

This circuit, as well as the Fifth and Ninth Circuits, has relied on the language in the *Metropolitan* case to the effect that the "deemer clause" creates "a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." We have also concluded that *Metropolitan* and the "deemer clause" have the specific effect that uninsured or self-insured ERISA plans are not subject to state insurance regulation either directly or indirectly, and that a state insurance law purporting to apply to such a plan is preempted.

■ The Alabama statute here clearly seeks to "regulate insurance," but in this case there is no insurance policy, insurance fund, or insurer which could be subject to state regulation directly or indirectly. The statute also purports to extend the state's regulatory authority to "any plan or agreement for health services" by providing that "insureds" have the right to chiropractic services "notwithstanding any provisions of such contract or policy of insurance *or plan or agreement* for health services to the contrary." (Emphasis supplied) Such law is preempted under the provisions of 29 U.S.C. § 1144(b)(2)(B), *supra,* which clearly establishes that neither an employee benefit plan nor any trust established under such a plan "shall be deemed to be an insurance company or other insurer, ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."

Under the decisions of this court, the Alabama statute is preempted and the order of the district court granting defendant's motion for summary judgment is therefore AFFIRMED.

specifically relating to the insurance industry and that it was therefore "saved" from preemption. In so ruling the court acknowledged that this court had previously ruled on the question in *Farlow v. Union Cen. Life Ins. Co., supra,* 874 F.2d 791 (1989), but the Alabama Supreme Court was "unconvinced that Congress intended this result."

Eleventh Circuit law controls in this instance, and we do not find the *HealthAmerica* case persuasive with respect to the state claims in this case.