**MEDCENTERS HEALTH CARE, INC.,**
**d/b/a Medcenters Health Plan,**
**Plaintiff,**

v.

**Lezlie OCHS and Gary Ochs, parents and legal guardians of Michael A. Ochs, a minor, Defendants.**

**No. 3–92 CIV 244.**

United States District Court,
D. Minnesota,
Third Division.

June 14, 1993.

---

590

Richard L. Jasperson, St. Paul, MN, for plaintiff.

Courey, Albers, Gilbert & Riley, P.A. by Thomas O. Albers, Minneapolis, MN, for defendants.

### ORDER

ALSOP, Senior District Judge.

The above-entitled matter came before the Court on Thursday, June 10, 1993, on cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Court will grant plaintiff's motion for summary judgment and deny defendants' motion.

### BACKGROUND

On February 18, 1987, Michael Ochs was severely burned when he was exposed to hot water while bathing. At the time Michael Ochs was injured, he was a participant in a Health Maintenance Organization plan with MedCenters Health Care, Inc. ("MedCenters") through his mother's coverage with her employer, the United States Postal Of-

fice. This coverage is provided to Lezlie Ochs under the Federal Employees Health Benefit Program ("FEHBP"), 5 U.S.C. § 8901.

Under the terms of the contract, MedCenters asserts the Plan was required to provide medical care in an alleged amount of $114,301.91 to Michael Ochs for the care and treatment of his injuries from the scalding. The contract provides the following subrogation and reimbursement clause:

> If a covered person is injured through the act or omission of another, the Plan requires that it be reimbursed for the benefits provided, in an amount not to exceed the amount of the recovery, or that it be subrogated to the person's rights to the extent of the benefits received under this Plan, including the right to bring suit in the person's name.

In June 1987, Michael Ochs, by his parents and legal guardians, commenced a lawsuit entitled *Michael Ochs, a minor, by his parents and legal guardians, Lezlie Ochs and Gary Ochs v. Stratford Wood Apartments, limited partnership, Robert S. Bisanz and Terrance E. Troy, individually and as general partners and as Real Estate Equities, Inc.* The action was venued in Hennepin County District Court. MedCenters Health Care, Inc. ("MedCenters") attempted to intervene in this action twice, and the state court granted MedCenters second complaint in intervention filed on April 2, 1990 to the extent MedCenters could pursue a subrogation claim against the state court defendants. On May 4, 1990, an order was entered in the state court action approving the settlement of the action. In the settlement, the tortfeasors' insurance company agreed to hold harmless and indemnify the Ochs from any subrogation claims.

MedCenters has demanded payment of its interest from the Ochs, and they have refused to pay. On April 22, 1992, MedCenters commenced the present action. Count One of MedCenters' complaint alleges breach of contract. Count Two brings a claim for equitable subrogation and unjust enrichment. Both parties have made motions for summary judgment.

### STANDARD OF REVIEW

■ The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2554, 91 L.Ed.2d 265 (1986); *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the present action, both parties agree that this matter is ripe for summary judgment and that there are no genuine issues of material fact, except for the exact amount MedCenters would be entitled to should it prevail.

### ANALYSIS

In the present action, MedCenters claims that the Ochs have breached their contract with it by not complying with the subrogation and reimbursement clause of the Plan. The contract at issue is governed by the provisions under the Federal Employees Health Benefit Act, 5 U.S.C. §§ 8901–8914. Under the FEHBP, the United States government is empowered to contract with health coverage plans to provide health insurance benefits for federal employees. As to which law should be applied in interpreting an FEHB contract, 5 U.S.C. § 8902(m)(1) provides:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any state or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

The first issue then is whether Minnesota state law "is inconsistent with [the] contractual provision[ ]" at issue. If so, then federal law controls interpretation of the contractual provision and the resulting rights and obli-

gations of the parties. The contractual provision at issue provides that MedCenters is required to be reimbursed for benefits provided to a covered person who is injured by the acts or omission of another in an amount not to exceed the amount of the recovery. The contract does not explicitly state the priority of payments received from a third party. Moreover, the contract does not expressly provide that MedCenters should be reimbursed even if the insured has not been fully compensated for his or her loss.

■ To determine whether Minnesota law is inconsistent with the subrogation clause at issue, this Court must examine Minnesota law and forecast how Minnesota law would treat MedCenters' claim to subrogation under its contract. In Minnesota, the "full recovery rule" provides that "absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss." *Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983) (no reimbursement to HMO for benefits provided to injured party out of settlement proceeds where injured party was not fully compensated for actual loss); *see also Hershey v. Physicians Health Plan*, 498 N.W.2d 519, 520 (Minn.App.1993) (discussing general rule); *Badger Equip. Co. v. Brennan*, 431 N.W.2d 900, 904 (Minn.App. 1988) (applying Minnesota subrogation law as articulated in *Westendorf* to disallow subrogation where injured party not fully compensated); *Allum v. MedCenter Health Care, Inc.*, 371 N.W.2d 557, 561 (Minn.App.1985) (general first priority language did not overcome the equitable full recovery rule enunciated in *Westendorf*).

Plaintiff argues, however, that under *Hunt v. Sherman*, 345 N.W.2d 750 (Minn.1984) and *Hershey v. Physicians Health Plan*, 498 N.W.2d 519 (Minn.App.1993) its contractual subrogation rights would not be displaced by the full recovery rule enunciated in *Westendorf*. In *Hunt*, the Minnesota Supreme Court examined an ERISA plan's subrogation clause, held that state law was preempted by ERISA, and applied the contract terms allowing for subrogation. In *Hershey*, the Minnesota Appellate Court held that where a health insurance contract expressly provides that the Plan may enforce its subrogation rights even if the insured has not been fully compensated, the full recovery rule will not bar enforcement of that clause. The subrogation clauses at issue in *Hunt* and *Hershey*, however, explicitly and unambiguously provided for subrogation even where the injured party had not been fully compensated.[1]

■ In the present case, notwithstanding plaintiff's arguments, the subrogation clause does not explicitly address the priority of payments or whether the Plan may recover even if the injured party is not fully compensated. This Court believes that Minnesota's full recovery rule requires that the subrogation clause must be explicit regarding priority of payments and the plan's recovery regardless of full recovery or the "full recovery rule" will bar subrogation. As such, the Court believes that if Minnesota state law were applied to plaintiff's action regarding its subrogation rights, plaintiff would be barred from recovering its interest from the Ochs because they had not been

---

1. In *Hershey*, the contract stated in relevant part:
   By accepting coverage under the Contract you agree

   .     .     .     .     .

   [The Plan] will be reimbursed from any recovery before payment of any other existing claims, including any claim by you for general damages.

   .     .     .     .     .

   [The Plan] may collect from the proceeds of any settlement or judgment recovered from

you or your legal representative regardless of whether you have been fully compensated.
*Hershey*, 498 N.W.2d at 520. In *Hunt*, the contract stated in relevant part:
   This plan shall be reimbursed to the extent of any payments made by the plan to or on behalf of a participant or his dependents. If any balance then remains from such recovery, it shall be applied to reimburse the participant. . . .
*Hunt*, 345 N.W.2d at 751.

fully compensated.[2] Although this Court agrees that section 8902(m)(1) does not "entirely displace state law," *see Eidler v. Blue Cross Blue Shield United of Wisconsin*, 671 F.Supp. 1213, 1217 (E.D.Wis.1987), a state common law equitable rule that denies the effect of a contractual provision surely is "inconsistent" with that provision. Accordingly, the Court finds that Minnesota state law is inconsistent with the contractual provision at issue and that therefore the contractual provisions preempt and supersede Minnesota state law.[3]

If the contractual provisions preempt and supersede Minnesota state law, as this Court conclude they do, the next issue is what federal law should this Court apply in determining whether MedCenters has a right to subrogation against the Ochs under the contract. MedCenters urges this Court to look no farther than the terms of the contract and to enforce the contract as written. In response, the Ochs argue that this Court should adopt Minnesota state law as federal common law.

In *Wahl v. Northern Telecom Inc.*, 726 F.Supp. 235, 241 (E.D.Wis.1989), the court concluded that Congress intended in ERISA for the federal courts to establish federal common law to determine the subrogation rights of the employee benefit plan. In making this determination, the court noted that "the only doctrinal guideline, besides Congressional intent, that appears to exist to help a federal court determine which substantive rights federal common law should

create or deny appears to be a federal interest in uniformity." *Id.* The court in *Wahl* found, however, that the terms of the subject plan did not provide for subrogation rights against the injured party and that it did not have to answer the difficult question of what subrogation rights existed under federal common law. *Id.* at 242. However, the court outlined what it would hold if faced with this difficult issue and outlined the possible sources for its determination in an enlightening footnote:

> This court notes that if [sic] had to answer this question it would hold that federal common law should state that a self-insured plan can have no greater rights to subrogation against an insured than provided by state law. This outcome would be reached for two reasons. First, Congress' purpose in enacting ERISA was to protect the interests of participants and beneficiaries of both insured and self-insured benefit plans. Permitting self-insured plans to avoid regulation of non-core ERISA matters undercuts Congress' objective by leaving self-insured plan participants and beneficiaries unprotected in areas such as subrogation rights. Second, interests in federal uniformity dictate that within a given state, self-insured and insured plans should be subject to the identical regulations on subrogation rights. Federal uniformity can be accomplished by (1) eliminating all regulation of subrogation rights (essentially permitting an insurer to

---

**2.** The Court has little difficulty finding, as the state court did in its order approving settlement, that the Ochs have not been fully compensated for the injuries Michael Ochs suffered. Michael Ochs suffered burns over ninety percent of his body. The order approving settlement provided for a cash payment of $240,000 to be allocated as follows: (1) attorneys' fees—$196,666.67; (2) attorneys' out-of-pocket expenses—$10,965.67; (3) payment to Lezlie Ochs—$3,000.00; (4) payment to Gary Ochs—$3,000.00 (5) payment to Allied Interstate for medical services—$2,540.22; (6) deposit with Norwest Bank on behalf of the minor, Michael Ochs—$23,827.44.

**3.** The Ochs also argue in their reply memorandum that MedCenters' argument that the subrogation provisions of the contract are not inconsistent with Minnesota state law as expressed in *Hunt* and *Hershey* destroys MedCenters' claim of federal jurisdiction. Because the Court finds

that state law is inconsistent with the contractual provision at issue, this Court necessarily has federal question jurisdiction over this matter pursuant to 5 U.S.C. § 8902(m)(1). In addition, the Court respectfully declines to follow the ruling in *Howard v. Group Hosp.*, 739 F.2d 1508, 1510 (10th Cir.1984) that the Ochs urge this Court to follow. In *Howard*, plaintiff sued a carrier who refused to pay a claim under an FEHBP medical insurance policy, and the carrier claimed that federal law should apply to the interpretation of the contractual provision. The *Howard* court rejected this argument, finding that the federal government's interest was insufficient to require a federal rule of decision. The *Howard* court dismissed the action for lack of subject matter jurisdiction. As stated, this Court finds that it has subject matter jurisdiction over this matter pursuant to 5 U.S.C. § 8902.

recover before an insured is made whole), or (2) establishing a federal rule that a self-insured plan cannot recover until the insured is made whole, or (3) allowing the state rule to govern. The first option is problematic because it is contrary to one of the purposes of ERISA and reduces the uniformity of the regulation of insured and self-insured plans. Similarly, the second option also reduces the uniformity of regulation of insured and self-insured plans. The third option, however, uniformly regulates insured and self-insured plans, and therefore is the one this court would adopt. *Id.* at 242 n. 4.

■ The Ochs argue that if this Court enforces the terms of the contract as written, the federal interest in uniformity will not be advanced. The Ochs claim that the rights of a member of a contract under the FEHBP will differ with each contract, and thus, no uniformity will be possible. An important difference, however, exists between the myriad plans covered by ERISA and plans covered by the FEHBP. Under the FEHBP, the United States Office of Personnel Management ("OPM") is given authority to contract with qualified health insurance carriers offering plans as described under the FEHBP. 5 U.S.C. § 8902(a). In addition, the Office may prescribe "reasonable minimum standards for health benefits plans" offered under the FEHBP. *Id.* at § 8902(e). Clearly, under the FEHBP, unlike the plans that are governed by ERISA, the mechanisms for achieving uniformity of treatment are in place at the formation phase of the contracts when the oversight of the OPM is taken into consideration.

Further, it is clear that the Congress' purposes in enacting the FEHB Act are to protect federal employees against high and unpredictable costs of medical care and to assure that federal employee health benefits are equivalent to those available in the private sector so that the government can compete in recruiting and retaining competent personnel. *See American Fed'n of Gov't Employees v. Devine,* 525 F.Supp. 250, 252 (D.C.D.C.1981) (citing to 1959 U.S.Code Cong. & Admin.News 2913); *see also Doe Devine,* 703 F.2d 1319, 1328 (D.C.Cir.1983). It is reasonable to assume that allowing insurers to be reimbursed for benefits provided may indirectly keep premiums from increasing.[4] With all due respect to the *Howard* court's thoughtful insights into this matter, the Court concludes that applying the terms of the contract advances the federal interest in uniformity and Congress' purposes in enacting the FEHB Act.

■ The Court also finds the Ochs's argument that this Court should adopt Minnesota state law as the federal common law without merit. Put plainly, the Ochs urge this Court to adopt as federal law a state law that would override the contractual terms because this Court cannot apply the same state law because it would override the contractual terms. It seems incongruous that this Court should adopt the very state law that, by its inconsistency with the contract at issue, propels the matter into the province of federal law.

The Ochs's final argument is that the contract is ambiguous regarding priority of payment, and this ambiguity should be construed against MedCenters. MedCenters claims that the OPM is the drafter of the contract, not MedCenters, and that therefore the ambiguity, if any, should be construed in favor of MedCenters, not against it. The Court need not resolve this fray, as it finds that the contract unambiguously provides for a right of reimbursement to MedCenters "for the benefits provided." Consequently, the Court concludes that there are no genuine issues of material fact and that MedCenters is entitled to judgment as a matter of law.

Accordingly, upon review of all the files, records, and proceedings herein,

---

4. Plaintiff has submitted the Affidavit of Paul Geiwitz. Defendants move to strike this affidavit because he is allegedly an expert witness, and the pretrial schedule in this matter required the parties to disclose all persons intended to be called as expert witnesses no later than November 1, 1992. Plaintiffs did not disclose Mr. Giewitz as an expert witness prior to that date. The Court finds that it can resolve the motions at issue without the benefit of the Affidavit of Paul Giewitz. Accordingly, the Court will not consider the affidavit and need not resolve plaintiff's motion to strike.

**IT IS HEREBY ORDERED** That

(1) Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is GRANTED;

(2) Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is DENIED;

(3) The Clerk of Court shall enter judgment as follows:

**IT IS ORDERED, ADJUDGED AND DECREED** That plaintiff MedCenters Health Car, Inc., d/b/a MedCenters Health Plan, have and recover for the benefits MedCenters provided plus costs and interest from defendants Lezlie and Gary Ochs, parents and legal guardian of Michael A. Ochs, a minor.