701 A.2d 932

GRACE AYBAR, PLAINTIFF, v. NEW JERSEY TRANSIT BUS OPERATIONS, INC., JIMMIE O. JAMES, DEFENDANTS–APPELLANTS, AND GOVERNMENT EMPLOYEES HOSPITAL ASSOCIATION, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 23, 1997—Decided October 14, 1997.

Before Judges PRESSLER, CONLEY and WALLACE.

*Patricia A. Schiripo*, Deputy Attorney General, argued the cause for appellants (*Peter Verniero*, Attorney General, attorney;

*Andrea M. Silkowitz*, Assistant Attorney General, of counsel; *Ms. Schiripo*, on the brief).

*Scott R. Jamison* argued the cause for respondent Government Employees Hospital Association, Inc. (*Melito & Adolfsen* and *Gordon & Barnett*, attorneys; *Mr. Jamison* and *Michael J. Schwab*, on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

As posed to us, the State in this appeal urges us to determine that "the anti-subrogation provision of the New Jersey Tort Claims Act ..., *N.J.S.A.* 59:9–2e [1], does not 'relate to' health insurance or plans ... within the meaning of [the Federal Employees Health Benefit Act] 5 *U.S.C.* § 8902(m)(1), and, thus, is not preempted thereby." The issue, potentially, is much broader and that is whether the Legislature's "collateral source" rule, applicable not only to tort claims against the State and State employees, *N.J.S.A.* 59:9–2(e), but all other litigation as well, *N.J.S.A.* 2A:15–97, is preempted by the Federal Employees Health Benefits Act (FEHBA). Moreover, preemption under FEHBA would, we think, mean preemption under FEHBA's counterpart in the private sector, the Employee Retirement In-

---

[1] *N.J.S.A.* 59:9–2e provides in full:

> If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee.

It is the last sentence that this appeal focuses upon.

come and Social Security Act (ERISA).[2] In a well-reasoned oral decision, the trial judge concluded that *N.J.S.A.* 59:9–2e's "anti-subrogation" clause was preempted. While we affirm that decision, we caution that our opinion is narrow in scope and limited solely to what the parties have presented.

## I

On November 15, 1990, plaintiff, a federal employee, was a passenger on a bus owned by appellant New Jersey Transit Bus Operations, Inc. (NJTBO). While exiting it, she tripped and fell, sustaining injuries for which she obtained treatment and incurred lost wages. Plaintiff sued NJTBO and the driver of the bus whose negligence, she claimed, was the direct and proximate cause of her injuries. At the time of the accident, plaintiff was insured under the health benefits plan of respondent Government Employees Hospital Association, Inc. (GEHA). That plan paid benefits in the amount of $39,818 for medical expenses.

Plaintiff settled with NJTBO for $150,000. The settlement agreement expressly stated that the $150,000 was for reimburse-

---

[2] ERISA has a preemption provision similar to that of FEHBA and it has been repeatedly observed that the scope and purposes of each are coextensive. *Blue Cross & Blue Shield of Fla. v. Department of Banking and Fin.*, 791 F.2d 1501, 1504 (11th Cir.), *reh'g denied*, 797 F.2d 982 (11th Cir.1986) (there is "no meaningful difference on the face of the statute between Congress' use of 'relates to' in ERISA and its use of the same words in § 8902(m)[(1) of FEHBA]."). ERISA preemption cases, therefore, have frequently been considered in deciding FEHBA preemption issues. *See, e.g., Burkey v. Government Employees Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir.1993); *Hayes v. Prudential Ins. Co. of Am.*, 819 F.2d 921, 926 (9th Cir.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988); *NALC Health Benefit Plan v. Lunsford*, 879 F.Supp. 760, 763 n. 3 (E.D.Mich.1995); *Barr v. Arkansas Blue Cross & Blue Shield*, 297 Ark. 262, 761 S.W.2d 174, 176 (1988); *Hartenstine v. Superior Ct.*, 196 Cal.App.3d 206, 241 Cal.Rptr. 756, 765, *cert. denied*, 488 U.S. 899, 109, S.Ct. 245, 102 L.Ed.2d 234 (1988). *But see Craig v. Government Employees' Ins. Co.*, 134 F.R.D. 126, 127 (D.Md.1991); *Fields v. Blue Shield of Cal.*, 163 Cal.App.3d 570, 209 Cal.Rptr. 781, 793 (1985) (concurring, Wiener). We agree with the majority view that FEHBA and ERISA preemption provisions are coextensive and thus consider ERISA cases in deciding this appeal.

ment of lost wages, compensation for pain and suffering and did not include medical costs. The State's release mandated that plaintiff commence a declaratory judgment action to determine whether GEHA is entitled to a "lien against the proceeds of the settlement." The agreement also provided that if it is judicially determined that GEHA is entitled to a "lien" NJTBO will indemnify plaintiff for the full amount of the "lien."

GEHA's plan is established pursuant to and governed by FEHBA and the regulations promulgated by the U.S. Office of Personnel Management (OPM). *See* 5 *C.F.R.* Pt. 890 (1997); 48 *C.F.R.* Ch. 16. The plan, in accordance with the FEHBA, provides health benefits coverage to eligible individuals pursuant to a federal government procurement contract entered into between OPM and GEHA. The FEHBA authorizes OPM to determine eligibility coverage, 5 *U.S.C.* §§ 8902(f), 8905, and 8908, and set standards for the termination of coverage, 5 *U.S.C.* § 8902(g), (h). It establishes qualifications for carriers, 5 *U.S.C.* § 8902(e). It establishes benefit levels and prescribes the method for setting plan rates, 5 *U.S.C.* §§ 8902(d), (i) and 8904. It provides for government contribution toward the cost of coverage, 5 *U.S.C.* § 8906, for the establishment of a dedicated fund in the United States Treasury for handling all FEHB Program funds, and OPM control of plan contingency reserves and program administrative expenses, 5 *U.S.C.* § 8909.

Thus, FEHBA vests in OPM sole authority and responsibility to enter into contracts with qualified carriers to provide health benefits coverage, 5 *U.S.C.* § 8902(a), sole discretion to determine which benefits are appropriate for inclusion in FEHB plans, and it requires OPM to include in each such contract an annual "detailed statement of benefits offered" for distribution to plan members which "include[s] such maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." 5 *U.S.C.* § 8902(d). Accordingly, that "detailed statement of benefits," or brochure, is expressly incorporated into and

thus forms a part of the federal government procurement contract establishing the GEHA benefit plan.

At least as presented to us, that brochure contains the following provision addressing GEHA's right to be reimbursed to the extent of health benefits paid from third-party recoveries obtained by its beneficiaries.

SUBROGATION

Subrogation means the Plan's *right to recover any of its payments* (1) made because of any injury to you or your dependent caused by a third party and (2) *which you* or your dependent *later recover* from the third party or the third party's insurer.

[Government Employee Hospital Association Benefit Plan Brochure, (1990) (emphasis added).]

To our knowledge, therefore, the particular plan here does not contain a reimbursement provision (similar to a statutory lien) upon *any* third-party recovery, either by jury, settlement or otherwise. *Contrast NALC Health Benefit Plan v. Lunsford,* 879 *F.Supp.* 760, 763 n. 5 (E.D.Mich.1995) (" 'If you or your covered dependent suffers an injury or illness through the act or omission of another, the Plan requires that it be reimbursed for benefits paid by the Plan … or that it be subrogated to … to the extent the benefits paid…. *All recoveries from a third party … must be used to reimburse the Plan for benefits paid. The Plan's share of the recovery will not be reduced because you or your dependent do not receive the full amount of damages claimed, unless the Plan agrees in writing to a reduction.'* " (emphasis added)). As provided to us, GEHA's plan provides for subrogation only to the extent of third-party recoveries by the beneficiary for plan payments.

## II

The critical FEHBA preemption provision, 5 *U.S.C.* § 8902(m)(1), provides:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder,

*which relates to health insurance or plans [2] to the extent that such law or regulation is inconsistent with such contractual provisions.* [Emphasis added.]

Preliminarily, while the State's appeal focuses upon the language "which relates to health insurance or plans," 5 *U.S.C.* § 8902(m)(1) also requires inquiries as to whether the circumstances are such that the state law or regulation is inconsistent with a particular plan's contractual provisions. As to any inconsistency, all that we have been presented is the plan's subrogation provisions, which we have set forth above. A right of subrogation, of course, "is an equitable device intended to effectuate an obligation's ultimate discharge by the one who ought to pay it and thus to promote 'essential justice' between the parties." *Hayes v. Pittsgrove Township Bd. of Educ.*, 269 *N.J.Super.* 449, 454–55, 635 .A.2d 998 (App.Div.1994). But, "a subrogee's rights can rise no higher than those of the subrogor." *Id.* (citation omitted). In *Hayes*, therefore, we held that the employee's medical plan could not "through subrogation, effect a recovery" from a State entity which the plan's beneficiaries could not obtain in light of *N.J.S.A.* 59:9–2(e)'s anti-subrogation clause. *Id.* at 455, 635 *A.*2d 998.[3] It might be suggested, therefore, that what we are asked to do here is render an advisory opinion since GEHA may, under the precise language of its plan, have no subrogation rights to plaintiff's lump sum, nonmedical settlement. *See generally Waller v. Hormel Foods Corp.*, 120 *F.*3d 138, 140 (8th Cir.1997); *Wahl v. Northern Telecom, Inc.*, 726 *F.Supp.* 235, 242 (E.D.Wis.1989). *Compare Medcenters Health Care, Inc. v. Ochs*, 854 *F.Supp.* 589, 592–93 (D.Minn.1993), *aff'd*, 26 *F.*3d 865 (8th Cir.1994).

The State, however, has not contended that GEHA has no exercisable subrogation rights and does not, therefore, argue that the "anti-subrogation" provision of *N.J.S.A.* 59:9–2(e) is not inconsistent with the particular plan provisions. Rather, its focus on appeal is the broadly stated proposition that an anti-subrogation

[3] The employee benefits plan in *Hayes* was a private employer sponsored plan. The opinion does not reflect whether it was an ERISA plan. Even if it were, the issue of ERISA preemption does not seem to have been raised.

provision does not "relate to" a FEBA plan within the meaning of 5 *U.S.C.* § 8902(m)(1). That is the sole issue we, therefore, decide.

As to that, we are convinced that *FMC Corp. v. Holliday,* 498 *U.S.* 52, 111 *S.Ct.* 403, 112 *L.Ed.*2d 356 (1990); *NALC Health Benefit Plan v. Lunsford, supra,* 879 *F.Supp.* 760; and *Medcenters Health Care, Inc. v. Ochs, supra,* 854 *F.Supp.* 589 are dispositive. We need not, therefore, engage in extensive generalized discussion of ERISA and FEHBA preemption upon which the case law is virtually unlimited. All three of these cases concern state "anti-subrogation" provisions under either ERISA's or FEHBA's "relate to" preemption clause and all three conclude a state anti-subrogation statute or rule does "relate to" protected plans.

In *FMC Corp. v. Holliday, supra,* the United States Supreme Court considered whether a Pennsylvania motor vehicle financial responsibility statute which contained an anti-subrogation provision prohibiting benefit plans from enforcing subrogation rights against third parties from whom their insureds collected [4], did have a "reference to" and a "connection with" ERISA benefits plans, therefore "relate[d] to" the plans and, thus, was preempted by ERISA. *FMC Corp. v. Holliday, supra,* 498 *U.S.* at 59, 111 *S.Ct.* at 408, 112 *L.Ed.*2d at 365. The Court observed that the purpose of the federal preemption clause was to ensure uniformity in the federal benefits plans, noting that "where a 'patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation,' we have applied the pre-emption clause to ensure that benefit plans will be governed by only a single set of regulations." *FMC Corp. v. Holliday, supra,* 498

---

[4] The Pennsylvania statute at issue provides "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to ... benefits ... paid or payable ... under § 1719." 75 *Pa. Cons.Stat.* § 1720 (1987). § 1719 refers to "[a]ny program, group contract or other arrangement for payment of benefits...." These terms "includ[e], but [are] not limited to, benefits payable by a hospital plan corporation or a professional health service corporation." 75 *Pa. Cons.Stat.* § 1719 (1987).

*U.S.* at 60, 111 *S.Ct.* at 409, 112 *L.Ed.*2d at 365. In finding that Pennsylvania's anti-subrogation provision falls within the scope of ERISA's preemption clause, the Court reasoned,

> Pennsylvania's antisubrogation law prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party. It requires plan providers to calculate benefit levels in Pennsylvania based on expected liability conditions that differ from those in States that have not enacted similar antisubrogation legislation. Application of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide.
>
> [*Ibid.*]

Thus, the Court held that Pennsylvania's anti-subrogation provision had a sufficient relation to ERISA benefit plans to fall within ERISA's scope of preemption because by prohibiting the shifting of the costs of benefits to a third-party tortfeasor, the state law prevented administrators from being able to calculate benefit levels utilizing a uniform, nationwide basis of expected liability projections.[5]

In *Medcenters Health Care, Inc. v. Ochs, supra,* 854 *F.Supp.* 589, defendant Ochs and her son were the insureds under MedCenters, a health plan operated by FEHBA, and received medical benefits from the plan for injuries sustained by Ochs' son. When Ochs filed a State court action against the tortfeasor, MedCenters intervened claiming subrogation rights. The Minnesota state court approved a settlement agreement between Ochs and the tortfeasor but denied MedCenters' subrogation rights based upon Minnesota's common law prohibiting subrogation. Under that common law, insurers are precluded from exercising contractual subrogation rights against third-party tortfeasors unless the bene-

---

[5] The Court in *FMC* also seems to have suggested that the general reference in the Pennsylvania law to "benefits payable by a hospital plan corporation or a professional health service corporation," directly "relate[d] to" ERISA plans. If that is an additional holding in *FMC*, we are not so sure it remains viable. *See Plumbing Indus. Bd. v. E.W. Howell Co., Inc.,* 126 F.3d 61, 68 (2d Cir.1997) (where the court there said, relying upon more recent United States Supreme Court cases, "[a] state statute will not be preempted simply because it contains a passing mention of or allusion to ERISA—a reference justifies preemption only if the challenged statute affects ERISA plans in a practical way.").

ficiary plaintiff is "made whole." Medcenters filed a federal district court action based upon FEHBA. In holding that FEHBA preempted the Minnesota anti-subrogation common law, the federal district court said:

> Further, it is clear that the Congress' purposes in enacting the FEHB Act are to protect federal employees against high and unpredictable costs of medical care and to assure that federal employee health benefits are equivalent to those available in the private sector so that the government can compete in recruiting and retaining competent personnel (citations omitted). It is reasonable to assume that allowing insurers to be reimbursed for benefits provided may indirectly keep premiums from increasing.... [T]he court concludes that applying the 'terms of the contract advances the federal interest in uniformity and Congress' purposes in enacting the FEHB Act.
>
> [*Medcenters Health Care, Inc., supra*, 854 *F.Supp.* at 594 (emphasis added).]

The Eighth Circuit Court of Appeals agreed. *MedCenters Health Care, Inc., supra*, 26 *F.*3d at 867.

In *NALC Health Benefit Plan v. Lunsford, supra*, 879 *F.Supp.* 760, NHBP, a FEHBA plan, brought suit against a plan beneficiary to recover reimbursement for medical expenses the insured received from a third-party tortfeasor to cover medical expenses resulting from an accident. The beneficiary had received $20,000 from a settlement with the third-party. NHBP sought reimbursement of the $12,704.79 that it had paid for medical expenses resulting from the accident. Michigan's "No Fault Motor Vehicle Liability Act," however, contains an anti-subrogation provision that prevented NHBP from reimbursement from the settlement money. The federal district court held that the anti-subrogation law was preempted because it conflicted with the plan's subrogation rights. *Id.* at 763. *Accord Waller v. Hormel Foods Corp., supra*, 950 *F.Supp.* at 945; *Buatte v. Gencare Health Sys., Inc.*, 939 *S.W.*2d 440, 442 (Mo.Ct.App.1996).

The State presents us with no case dealing with an anti-subrogation provision that holds such a provision is not preempted by FEHBA or ERISA. Rather, it focuses upon a somewhat more cautious view taken by the Supreme Court in its recent ERISA preemption cases. *See De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* —— *U.S.* ——, 117 *S.Ct.* 1747, 138 *L.Ed.*2d 21

(1997); *Boggs v. Boggs,* —— *U.S.* ——, 117 *S.Ct.* 1754, 138 *L.Ed.*2d 45 (1997); *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.,* —— *U.S.* ——, 117 *S.Ct.* 832, 136 *L.Ed.*2d 791 (1997); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 *U.S.* 645, 115 *S.Ct.* 1671, 131 *L.Ed.*2d 695 (1995). It is *Travelers* that the State primarily relies upon and which represents the beginning of the Court's more narrow approach. *Travelers,* however, not only did not concern an anti-subrogation law, but, dispositive for us, expressly reaffirmed its holding in *FMC Corp.* that such laws are preempted. *Travelers, supra,* 514 *U.S.* at 658, 115 *S.Ct.* at 1678, 131 *L.Ed.*2d at 706. With the limited exception we have previously mentioned, *see supra,* note 5, we discern no change in this view in any of the other recent United States Supreme Court cases.

We, therefore, affirm the trial judge's conclusion that *N.J.S.A.* 59:9–2(e)'s anti-subrogation provision is preempted by 5 *U.S.C.* § 8902(m)(1). As we have said, however, whether GEHA has subrogation rights to exercise under the particular circumstances here is not before us. We offer, moreover, one other comment. The anti-subrogation provision in *N.J.S.A.* 59:9–2(e) forms only a part of subsection (e). The bulk of 9–2(e) is the Tort Claims Act's version of the Legislature's "collateral source" rule.[6] ERISA or FEHBA preemption of that rule has not been presented to us and we express no view as to that. We do recognize that a federal district court judge has so held, at least in the context of *N.J.S.A.* 2A:15–97. *See Danowski v. United States,* 924 *F.Supp.* 661, 670–

---

[6] In this respect, *N.J.S.A.* 59:9–2(e) provides, in addition to its anti-subrogation clause:

> If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant. . . .

This provision is similar to New Jersey's general "collateral source" rule contained in *N.J.S.A.* 2A:15–97.

72 (D.N.J.1996). The rationale of that decision, however, seems to be premised upon the thought that the reference to all "benefits, other than workers' compensation benefits or the proceeds from a life insurance policy," in *N.J.S.A.* 2A:15-97 expressly relates to ERISA or FEHBA plans. If the more recent United States Supreme Court cases have narrowed the scope of ERISA and FEHBA preemption at all, it may be in this limited area. *See supra*, note 5. *And see Blackburn v. Sundstrand Corp.*, 115 *F*.3d 493 (7th Cir.1997) (Illinois common-fund law that allows insureds to credit of attorney's fees against ERISA plan's subrogation claim for medical benefits was not preempted).

But the issue has not been raised. Moreover, there was no "award" or jury verdict here to even trigger the "collateral source" provisions of *N.J.S.A.* 59:9-2(e). "[T]here will [then] be time to cross that bridge when we come to it." *Blackburn v. Sundstrand Corp.*, *supra*, 115 *F*.3d at 496.

Affirmed.